# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: January 11, 2023

| | | |
|---|---|---|
| * * * * * * * * * * * * | | |
| WILLIAM B. STRICKLAND, | * | |
| *and*, CHRISTINA STRICKLAND | * | Unpublished |
| *on behalf of E.S.,* | * | |
| | * | |
| Petitioner, | * | No. 18-269V |
| | * | |
| v. | * | Special Master Gowen |
| | * | |
| SECRETARY OF HEALTH | * | Final attorneys' fees and costs; |
| AND HUMAN SERVICES, | * | Reduction of expert costs; |
| | * | Reduction of attorneys' hourly rates. |
| Respondent. | * | |
| * * * * * * * * * * * * | | |

*John W. Frost, II*, Frost Van den Boom & Smith, P.A., Bartow, Florida, for petitioners.
*Mallori B. Openchowski*, U.S. Dept. of Justice, Washington, D.C., for respondent.

## DECISION ON FINAL ATTORNEYS' FEES AND COSTS[1]

On April 4, 2022, William B. Strickland and Christina M. Strickland, on behalf of E.S. ("petitioners"), filed a motion for final attorneys' fees and costs. Petitioner's Fees Application ("Fees App.") (ECF No. 95). For the reasons discussed below, I hereby GRANT petitioner's motion for attorneys' fees and costs consistent with the following opinion.

### I.  Procedural History

On February 21, 2018, petitioners filed a petition in the National Vaccine Injury Compensation Program.[2] Petitioners alleged that as a result of E.S. receiving the Diphtheria-Tetanus-acellular Pertussis ("DTAP"), hepatitis B, Hib, IPV, and the pneumococcal conjugate vaccines on September 6, 2016 caused him to suffer Parsonage-Turner Syndrome. Petition (ECF No. 1).

---

[1] In accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012), because this opinion contains a reasoned explanation for the action in this case, **this opinion will be posted on the website of the United States Court of Federal Claims**. This means the opinion will be available to anyone with access to the internet. As provided by 42 U.S.C. § 300aa-12(d)(4)B), however, the parties may object to the published Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). **If neither party files a motion for redaction within 14 days, the entire opinion will be posted on the website and available to the public in its current form.** *Id.*

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to 34 (2012) (hereinafter "Vaccine Act" or "the Act"). Hereinafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

1

On September 17, 2018, respondent filed the Rule 4(c) report conceding that entitlement to compensation for petitioners was appropriate. Respondent's ("Resp.") Report ("Rept.") (ECF no. 19). On September 19, 2018, a Ruling on Entitlement was entered by then Chief Special Master Dorsey, finding that E.S. is entitled to compensation. Ruling on Entitlement (ECF No. 20).

The case was transferred to my docket on March 11, 2021. Notice of Reassignment (ECF No. 76). On March 18, 2021, I held a status conference with the parties, where the issue of damages was discussed. Scheduling Order (ECF No. 79). Specifically, I noted that this case was complicated by the fact that E.S. suffered from Charcot Marie Tooth disease ("CMT"), a condition not caused by the response to a vaccine, and brachial neuritis, the vaccine-related injury. As a result of the brachial neuritis, E.S. had lost almost all function of his left upper extremity due to the vaccine-related injury, and thus, should be awarded $250,000.00 in pain and suffering, and the life care plans should focus on the vaccine-related injury. *Id*. at 2-3. I ordered the parties' life care planners to meet and attempt to resolve the issues in the life-care plans in accordance with the order. *Id*. at 3-4.

On August 2, 2021, the parties filed a joint status report stating that the parties had come to an agreement on the structure of the life care plan and unreimbursed medical expenses, but still disagreed on the amount to be awarded for pain and suffering. Joint Status Report (ECF No. 84). I held a second status conference on December 13, 2021. Scheduling Order (ECF No. 86). During this status conference, I reiterated my view that E.S. should be awarded $250,000.00 in pain and suffering, explaining that E.S. had lost function of his left upper extremity. Even the loss of use of one arm, even the non-dominant arm, causes significant disability, and inability to perform many activities of daily living. Further, E.S. was scheduled to undergo multiple surgeries. *Id*. at 2-3. The parties were ordered to resume settlement discussions and if they could not reach a final agreement on pain and suffering, the parties could submit briefs on the issue. *Id*. at 3. The parties re-engaged in settlement discussions.

On February 18, 2022, respondent filed a Proffer on Award of Compensation and I entered a Decision on Proffer the same day, awarding petitioner's compensation. Decision (ECF No. 92).

On April 4, 2022, petitioner filed the instant attorneys' fees and costs motion. Fees App. Petitioners request a total of $73,886.00 in attorneys' fees and $63,779.84 in attorneys' costs. *Id*. at 1. The motion for fees and costs states that, "Petitioners have incurred $52,495.75 in costs…..as well as interest at the rate of twelve percent per annum on those costs through April 1, 2022, in the amount of $11,304.09." Id. at 1. Additionally, petitioners request reimbursement for fees associated with the establishment of a guardianship ($2,100.00) and for future costs associated with the guardianship ($16,000.00) submitted by attorney Ms. Roberta Creighton, an attorney who practices in the guardianship field. *Id.* at 2.

On May 2, 2022, respondent file a response to petitioners' motion. Respondent's Response ("Response") (ECF No. 97). Respondent stated, "….with respect to the fees and costs incurred by the Frost law firm: respondent is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." Response at 2. Respondent further requested that "the Court exercise its discretion and determine a reasonable award for attorneys' fees and costs for the Frost Law Firm and Ms. Creighton's fees and costs associated with the establishment of the guardianship." *Id*. at 2-3. However, respondent did note interest on attorneys' fees and costs is not authorized by the Vaccine Act. *Id*. at 2, n.1. Respondent cited to *Raymo v. Sec'y of Health & Human Servs.,* where the Claims Court explained

2

that "As a general matter, 'interest cannot be recovered in a suit against the [g]overnment in the absence of an express waiver of sovereign immunity from an award of interest.'" 129 Fed. Cl. 691, 706 (2016), citing *Preseault v. U.S.,* 52 Fed. Cl. 667 (2002); Response at 3. Further the Claims Court explained that the vaccine Act "provides for reasonable attorneys' fees and costs, but does not provide for an award related to interest accumulated on those fees and costs." *Raymo*, at 706; Response at 3, n.1.

While respondent did not object to the costs associated with the creation of the guardianship, respondent objected to an award of costs associated with the "future maintenance" of the guardianship for E.S. "based on the information provided." Response at 4. Respondent stated that petitioner submitted an affidavit from Ms. Creighton, but it did not provide detail as to how she arrived at the proposed figure of $16,000.00 for the "projected guardianship attorneys' fees and costs" until E.S. reaches the age of majority. Id.

Citing to *McCulloch*, respondent recognized that the Federal Circuit found that fees and costs for the maintenance of a guardianship are allowable under section 15(e) of the Vaccine Act, but that in this case, petitioners have not established the reasonableness of their request. *Id.* at 5. Respondent stated that the affidavit of Ms. Creighton "contains no information about what additional work will be needed in the future to comply with Florida state statutory requirements regarding the maintenance of the guardianship, and no estimate of how much attorney or paralegal time those tasks will take." *Id.* at 5-6. Further, respondent argued that "there is no explanation for the estimate of future costs. Without further information as to the guardianship requirements and obligations under Florida law, the Court cannot assess the reasonableness of this request." *Id*. at 6. Respondent requested that the Court require additional information from petitioner "pertaining to the request for fees associated with guardianship maintenance." *Id*. at 6.

On May 5, 2022, petitioners filed a reply to respondent's response. Pet. Reply (ECF No. 98). Petitioners argue generally that the fees associated with the Frost Law Firm are reasonable and the rates awarded to the attorneys and paralegals at the Frost Law Firm are consistent with the hourly rates awarded in other Vaccine Program cases. Pet. Reply at 2-3. Then petitioners argue that the payment of interest on costs is permissible under the Vaccine Program. Petitioners advance several arguments to support this position.

First, petitioners argue that they are entitled to interest on the attorneys' costs associated with the claim. Pet. Reply at 2-3. Petitioners advance multiple arguments in support of awarding interest on attorneys' costs. The first argument is that the Vaccine Act is a waiver of sovereign immunity for the appropriate class of claimant. Pet. Reply at 4. Petitioners state that the waiver of sovereign immunity for the Vaccine Act is a "general, rather than limited waiver." *Id*. Petitioners argue that the general waiver of sovereign immunity then acts as a waiver to the general rule that "interest against the United States may not be awarded absent an express waiver of sovereign immunity with respect to interest." *Id*. at 4. Petitioners assert that the absence of an express waiver of the rule does not create an absolute prohibition against the award of interest and cites to Standard *Oil Co. v. U.S.* and *U.S. v. The Thekla*, where awards of interest were awarded by the Supreme Court. *Id*.

Secondly, petitioners argue that because the Vaccine Act has created a statutory scheme to pay reasonable attorneys' fees and costs to ensure that vaccine-related claimants will have access to competent attorneys to prosecute their claims and the payment of interest on attorneys' fees and costs will further that statutory goal. Pet. Reply at 5. But the payment of reasonable attorneys' fees and costs,

3

even when claimants are unsuccessful, achieves that policy goal without interest pyaments.

Finally, petitioners argue that counsel would be eligible for interest on costs expended on a successful suit brought directly against a vaccine manufacturer or a physician. Pet. Reply at 5. However, in the Vaccine Program, the U.S. government "stands in the shoes of the vaccine manufacturers," and the Vaccine Program is operated with funds contributed by the vaccine manufacturers, "the award of interest on reimbursement for the costs [associated with the litigation], would be within this Court's discretion and promote the purpose of the Vaccine Act." *Id*.

Lastly, in the reply, petitioners explain that attorney Roberta Creighton has provided a detailed explanation as to how the $16,000.00 in future costs associated with maintaining the guardianship until E.S. reaches the age of eighteen. Pet. Reply at 5. Petitioners state that the detailed explanation, as requested by respondent in the response, is attached to petitioners' reply.

This matter is now ripe for adjudication.

## II.     **Applicable Legal Standard for Attorneys' Fees and Costs**

The Vaccine Act provides that the special master shall award "reasonable" attorneys' fees and costs for any petition that results in an award of compensation. § 300aa–15(e)(1). In this case, petitioner was awarded compensation pursuant to a joint stipulation. Therefore, she is entitled to an award of reasonable attorneys' fees and costs.

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs*., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under the lodestar approach, a court determines the number of hours reasonably expended in the case and reasonable hourly rates for the attorney(s) involved. Id. at 1347-58 (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The court multiplies those numbers and may adjust the sum upwards or downwards based on other specific findings.

Petitioners "bea[r] the burden of establishing that the hours expended, the rates charged, and the expenses incurred" are reasonable. *Wasson v. Sec'y of Health & Human Servs.,* 24 Cl. Ct. 482, 484 (1993). A request for attorneys' fees should be supported by contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *Savin v. Sec'y of Health & Human Servs.,* 85 Fed. Cl. 313, 316-18 (Fed. Cl. 2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Human Servs.,* 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgement, [is] reasonable for the work done." Id. at 1552. The special master may reduce a request sua sponte, apart from objections raised by respondent and without providing petitioner notice and opportunity to respond. *Sabella v. Sec'y of Health & Human Servs.,* 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Human Servs.,* 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

The "reasonableness" requirement also applies to costs. *Perreira v. Sec'y of Health & Human Servs.,* 27 Fed. Cl. 29, 34 (1992). A request for costs incurred by either counsel or the petitioner

himself should include supporting documentation, such as invoices from experts and itemized receipts. Like a request for attorneys' fees, a request for costs may be reduced *sua sponte* and based on the special master's experience and discretion.

### a. Hourly rate

Petitioners requests a total of $79,836 in attorneys' fees. Fees App. at 1.[3]   Specifically, petitioners request that their attorneys, Mr. John Frost, be reimbursed at an hourly rate of $500.00 per hour for work performed from 2017-2020; Ms. Lydia Zbrzeznj and Mr. Raymond Jack be reimbursed at an hourly rate of $350.00 per hour for work performed during the pendency of this case; and that the work performed by the paralegals be reimbursed at an hourly rate of $120.00 per hour for work performed during the pendency of this claim.

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Avera, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs*., 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorneys' fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. Id. This is known as the Davis County exception. *Hall v. Sec'y of Health & Human Servs.,* 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

Succinctly stated, the forum rate is the "default rate" unless there is a "very significant difference" between local and forum rates. For cases in which forum rates apply, *McCulloch* provides a framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. *McCulloch v. Sec'y of Health & Human Servs.,* No 09- 293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) motion for recons. denied, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). The Court has since updated the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules for 2015-2016 and from 2017-2022, which can be accessed online.

### 1. Reasonable rates for Mr. John Frost

Factors to be considered when determining an attorney's appropriate hourly rate are: (1) the prevailing rate for comparable work in Washington, D.C.; (2) the prevailing rate for cases in the Vaccine Program; (3) the experience of the attorney in question within the Vaccine Program; (4) the overall legal experience of the attorney; (5) the quality of work performed by the attorney in the vaccine case; and (6) the reputation of the attorney in the legal community and the community at large.  *McCulloch*, 2015 WL 5634323, at *17.

Mr. John Frost was licensed to practice law in 1969 and has been practicing law for over 40 years. Mr. Frost has successfully brought one other claim in the Vaccine Court in 2008. See *Peddy*, *legal representatives of minor child, D.P. Jr., v. Sec'y of Health and Human Servs.,* No. 08-720V, 2013 WL

---

[3] This amount includes a supplemental request filed by petitioners on October 25, 2022.

4736835 (Fed. Cl. Spec. Mstr. Aug. 7, 2013). Given Mr. Frost's limited experience in the Vaccine Program, the lower end of the McCulloch range is appropriate. In 2017-2020, Mr. Frost fell into the *McCulloch* range for attorneys with 31+ years of experience. As a result, Mr. John Frost's requested rate of $500.00 per hour for work performed for 2017- 2020 will be reduced and I will award him the following rates:

| Year | Hourly Rate | Hours Bill | Total |
|------|-------------|------------|---------|
| 2017 | $400 | 2.6 | $1,040 |
| 2018 | $410 | 2.4 | $984 |
| 2019 | $420 | 27.3 | $11,466 |
| 2020 | $440 | 34 | $14,960 |

The rates Mr. Frost requested for 2021 and 2022 of $500.00 per hour are consistent with OSM's Attorneys' Forum Hourly Rates and does not need to be adjusted. **Thus, consistent with the hourly rate I have determined to be reasonable, the petitioners' fee request will be reduced by $4,500.00.**

### 2. Reasonable rates for Ms. Lydia Zbrzeznj

Ms. Lydia Zbrzeznj was licensed to practice law in 2012, placing here in the OSM range of attorneys with 4-7 years' experience for her time billed from 2018-2019. Ms. Zbrzeznj's requested rate of $350.00 per hour for both years exceeds what an attorney with comparable overall legal experience, but a lack of Vaccine Act-specific experience, would receive in the Vaccine Program. As such a rate reduction is appropriate and I will award an hourly rate of $230.00 per hour for the time period Ms. Zbrzeznj worked on the instant case. **Therefore, the attorneys' fee awarded will be reduced by $4,980.00.**

### 3. Reasonable rates for Mr. Raymond Jack

Mr. Raymond Jack was licensed to practice law in 2018, placing him in the OSM range of attorney with less than 4 years' experience for the time billed on this matter from 2019. Mr. Jack's requested rate of $350.00 exceeds what an attorney with comparable overall legal experience and experience in the Vaccine program would receive in the Vaccine program. As such a rate reduction is appropriate and I will award an hourly rate of $162.00 per hour for the time-period that Mr. Jack worked on the instant case. **As it appears that Mr. Jack only billed for 12.5 hours of his time, the attorneys' fees award will be reduced by $2,350.00.**

### 4. Conclusion

The reduction of the hourly rates for the attorneys that worked on petitioners' case results in a total reduction of $11,830.00.

### b. Hours Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." Avera, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxon*, 3 F.3d at 1521 (quoting, *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

The undersigned has previously reduced the fees paid to petitioners due to excessive and duplicative billing. *See Ericzon v. Sec'y of Health & Human Servs.*, No. 10-103V, 2016 WL 447770 (Fed. Cl. Spec. Mstr. Jan. 15, 2016) (reduced overall fee award by 10 percent due to excessive and duplicative billing); *Raymo v. Sec'y of Health & Human Servs.*, No. 11-654V, 2016 WL 7212323 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) (reduced overall fee award by 20 percent), mot. for rev. denied, 129 Fed. Cl. 691 (2016).

After a review of the billing log, I have determined that a reduction in the number of hours requested is appropriate for excessive billing. For example, Mr. Frost billed 0.2 hours for the "receipt and review" of basic electronic notifications, such as a "Notice of Appearance" by the government's attorney, or the review of a one-page scheduling orders. See e.g. Fees App., Exhibit ("Ex.") A (4/4/2018-receipt and review of notice of appearance); ( 2/19/2019-receipt and review of status report); (5/17/2019-receipt and review of Scheduling Order); (01/28/2020- Receipt and Review Notice of Appearance); (1/29/2020-review "Respondent to file status report by 1/31/20."); (4/6/20-Receipt and review of Notice of Appearance); (4/21/20-Receipt and review of respondent's status report-requesting additional 30 days to update court); (7/21/20- receipt and review of Scheduling Order).

Accordingly, I will deduct a further 1%, amounting to $650.56 from the fee award. **As such, the total amount of attorneys' fees is reduced by $12,450.56 for Mr. Frost.**

### c. Attorneys' Costs

Similar to attorneys' fees, a request for reimbursement of costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 26, 34 (1992). Petitioners request a total of $52,495.75 in costs and then an additional $11,304.09 in interest on these costs.

**1. Reasonable attorneys' costs**

The request for attorneys' costs of $52,495.75 including the cost of acquiring medical records, the Court's filing fee, retention of experts, and shipping are well documented in this case. Petitioner has submitted invoices from experts retained in this case, including from Dr. Michael Shahnasarian, to assist in the creation and analysis of a life care plan. See Fees App., Ex. A. Most of the attorneys' costs are related to the retention of the life care planner and economist.

Specifically, $33,094.12 are for reimbursement to Career Consultants of America for Michael Shahnasarian, Ph.D, for the development of the life care plan for E.S. Fees App. Ex. B. The invoices suggest that the Career Consultants of America charged $575.00 per hour for work performed in 2019 and $595.00 per hour for work performed in 2020-2021. *See* Fees App. Ex. B. The work included reviewing the records, calling E.S.'s treating physicians, meeting with respondent's life care planner and preparing multiple life care plans. *Id.* at 1-3.

According to Dr. Shahnasarian's CV, he has a Ph.D in psychology, is a licensed mental health counselor and certified as a rehabilitation counselor and life care planner. Fees. App. Ex. A. Dr. Shahnasarian has been the president of Career Consultants of America, Inc. since 1985. However, the rate at which petitioners seek reimbursement is well-above the amount that has previously awarded to

other life care planners in the program. Previous rates that have been awarded to experienced life care planners range from $125.00 per hour to $250.00 per hour. *See Brown v. Sec'y of Health & Human Servs.,* No. 18-786V, 2022 WL 3591238 (Fed. Cl. Spec. Mstr. July 28, 2022) (approving a rate of $125.00 per hour for an experienced life-care planner); *Peters v. Sec'y of Health & Human Servs.*, No. 16-638V, 2021 WL 4269915 (Fed. Cl. Spec. Mstr. April 20, 2021) (approving a rate of $250.00 per hour for work performed by a registered nurse and experienced life care planner). While it appears that Dr. Shahnasarian is an experienced life care planner, the hourly rate he is requesting far exceeds the hourly that other experienced life care planners in the Vaccine Program have received. Therefore, the undersigned is reducing his hourly rate to $350.00 per hour for the years in which he worked on this case.

It appears that Dr. Shahnasarian worked a total of 55.48 hours on this case. These hours included reviewing records, meeting with petitioners and E.S., conversing with the respondent's life care planner, and drafting and revising the life care plan. This case presented additional difficulty when separating E.S.'s underlying CMT from his vaccine-related injury of brachial neuritis, along with extensive medical records. Recognizing the complexity of this task, as developed through the final life care plan, it appears that the hours billed by Dr. Shahnasarian are reasonable.

**Therefore, applying the reduced hourly rate of $350.00, Dr. Shahnasarian reimbursement total will be $19,778.47, representing a total reduction of $13,315.61**.

Petitioner submitted an affidavit from economist, Mr. Frederick A. Raffa, Ph.D., the president of Raffa Consulting Economists, Inc., which is described as a "company that specializes in computing the present value of economic loss and future claims in litigated matters." Fees App. Ex. B at 1. The total cost associated with the work performed by Raffa Consulting Economists is $18,420.00. In the engagement letter, submitted by petitioners, Raffa Consulting Economists explained that they charge an hourly rate of $400.00 per hour for work performed by economists who have Ph.Ds. and Dr. Raffa charges $500.00 per hour for his work. Id. at 2. The rate the Vaccine Program has reimbursed costs associated with economists have ranged from $300.00 per hour to $525.00 per hour. See *Konen v. Sec'y of Health & Human Servs.,* No. 18-174V, 2022 WL 226048 (Fed. Cl. Spec. Mstr. Jan. 11, 2022) (approving a rate of $360.00 per hour for an economist, who is also a certified public accountant); *Peters v. Sec'y of Health & Human Servs.,* No. 16-638V, 2021 WL 4269915, at *3 (Fed. Cl. Spec. Mstr. Aug. 20, 2021) (approving a reasonable rate of $400.00 per hour for an economist with an MBA because it was within the range of rates that the court has previously found reasonable for an economic expert); *see also J.T. v Sec'y of Health & Human Servs.,* No 12-618V, 2018 WL 4623163, at *8 (Fed. Cl. Spec. Mstr. Apr. 20, 2018) (finding $525.00 per hour to be reasonable for petitioner's economist without providing additional detail); *Torday v. Sec'y of Health & Human Servs.,* No. 17-372V, 2011 WL 2680717, at *4 (Fed. Cl. Spec. Mstr. May 4, 2011) (noting a range of economist rates and awarding rates of $400.00 per hour and $450.00 per hour). The rates requested by petitioner for reimbursement for the work performed by Dr. Raffa and his firm are within the rates that have been previously awarded in the Vaccine Program and will not be adjusted.

2. **Interest on costs**

Petitioners argue that counsel should also be awarded $11,304.09 in "interest on costs advanced." Fees App., Ex A at 1. However, interest on attorneys' costs and fees are impermissible in the Vaccine

8

Program.

The Court of Federal Claims explained in *Raymo* that "As a general matter, 'interest cannot be recovered in a suit against the [g]overnment in the absence of an express waiver of sovereign immunity from an award of interest.'" *Raymo*, at 706 (citing *Preseault v. United States*, 52 Fed. Cl. 667, 677 (2002) (quoting *Library of Congress v. Shaw*, 478 U.S. 310, 311, 106 S.Ct. 2957 (1986)). Petitioners in this case argue that the Vaccine Act creates a general waiver of sovereign immunity with respect to vaccine-claimants and that "general waiver" allows the payment of interest on attorneys' fees and costs. However, petitioners' argument stretches the understanding and purpose of the Vaccine Act's waiver of sovereign immunity. The Vaccine Act creates a limited waiver of sovereign immunity, where the government consents to be sued for vaccine-related injuries by certain vaccines, within certain limitations established by the Act. Further, the Vaccine Act allows costs and attorneys' fees to be recovered against the government through 42 U.S.C. § 300aa-15(e)(1). However, "this section cannot be construed broadly….because "limitations and conditions upon which the government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Jessup v. Sec'y of Health & Human Servs.*, 26. Cl. Ct. 350, 352 (1992). Thus, the waiver of sovereign immunity that the Vaccine Act created where the government has consented to be sued by certain claimants and for limited purposes is a more limited waiver of sovereign immunity than proposed by petitioners.

Further, the "no-interest" rule can only be waived by a specific provision in a contract or statute, or by the express direction of Congress." *England v. Contel Advanced Sys. Inc.,* 384 F.3d 1372, 1379 (Fed. Cir. 2004) (citing *Shaw*, 478, U.S. at 317, 106 S.Ct. 2957). The Vaccine Act provides for reasonable attorneys' fees and costs, but does not provide for an award related to interest accumulated on those fees and costs. *Raymo*, at 706. Thus, special masters have routinely denied the reimbursement for interest on costs. See *Kollias v. Sec'y of Health & Human Servs.,* No. 16-868V, 2018 WL 6301793, at *3 (Fed. Cl. Spec. Mstr. Oct. 2, 2018); *Kleva v. Sec'y of Health and Human Servs.*, No. 17-749V, 2019 WL 2156432, at *1 (Fed. Cl. Spec. Mstr. Mar. 18, 2019); *Estate of Gold v. Sec'y of Health & Human Servs.,* No 19-402V, 2021 WL 1546062, at *2 (Fed. Cl. Spec. Mstr. Mar. 26, 2021). Consistent with those decisions, petitioners' request for interest on costs are denied. **Thus, petitioners' attorneys' costs will be reduced by $11304.09.**

### d. Conclusion

Accordingly, petitioners are awarded a total of $67,385.44 in attorneys' fees and $39,180.14 in attorneys' costs to their attorney, Mr. Frost and associates.

### III.     Fees Incurred for Guardianship Proceedings and Maintenance

In addition to the fees and costs generated by Mr. Frost, petitioners are also seeking reimbursement of attorneys' fees related to the guardianship proceedings undertaken by Ms. Roberta Creighton and for the projected maintenance of the guardianship for E.S., until E.S. reaches the age of majority. Fees App. at ¶¶ 4-5.

Where, as here, guardianship is incorporated into the terms of an award based on stipulation, special masters have often awarded costs relating to the establishment of the guardianship estate in the in the form of attorneys' fees. See e.g., *Martin v. Sec'y of Health & Human Servs.*, No. 16-318V, 2019

WL 625442 (Fed. Cl. Spec. Mstr. Jan 22, 2019); *Derenzo v. Sec'y of Health & Human Servs.*, No. 16-35V, 2018, WL 1125231 (Fed. Cl. Spec. Mstr. Jan 9, 2018); *Cansler v. Sec'y of Health & Human Servs.*, No. 09-596V, 2011 WL 597791, at *3 (Fed. Cl. Spec. Mstr. Feb. 2, 2011).

Here, petitioners' guardianship attorney, Ms. Roberta Creighton asks for reimbursement for the fees and costs incurred relative to the establishment of a guardianship of the estate of the minor child, in the amount of $2,400.00. Ms. Creighton is seeking reimbursement at an hourly rate of $300.00 per hour. Ms. Creighton is asking for $1,695.00 in attorneys' fees for the establishment of the guardianship and $405.00 for costs associated with establishing the guardianship. As the establishment of the guardianship was necessary for compensation to be awarded, these fees and costs shall be awarded in full.

Additionally, petitioners are requesting that Ms. Creighton be reimbursed for fees and costs associated with the maintenance of the guardianship in the state of Florida. In support of this requests, petitioner submitted an updated affidavit from Ms. Creighton which outlined the number of hours per year and costs associated with maintaining and discharging E.S.' estate until he reaches the age of majority.

In *McCulloch,* I awarded petitioner's attorneys' fees request, which included funds for the preparation of an annual guardianship plan, the annual accounting of the state, an annual audit fee, and the annual bond premium. See *McCulloch v. Secretary of Health & Human Servs.*, No. 09-293V, 2017 WL 7053992, at *1–2 (Fed. Cl. Spec. Mstr. Dec. 19, 2017). Respondent sought review and reversal of the award of costs petitioners would incur in the court of maintaining the guardianship through petitioner's life. Judge Lettow, of the Court of U.S. Court of Federal Claims, held that amounts required to maintain guardianship were compensable under the Vaccine Act, and the Government appealed. *See McCulloch v. Sec'y of Health & Hum. Servs.,* 137 Fed. Cl. 598, 599 (2018), aff'd on other grounds, 923 F.3d 998 (Fed. Cir. 2019). On appeal from the United States Court of Federal Claims, the United States Court of Appeals of the Federal Circuit, affirmed my order and found that the expenses of the creation and maintenance of a guardianship come within § 300aa–15(e)(1) and are therefore an allowable expense. *See McCulloch v. Sec'y of Health & Hum. Servs.*, 923 F.3d 998 (Fed. Cir. 2019).

Ms. Creighton explained that it would take approximately "four to five hours" of attorney time per year for the maintenance of E.S.'s trust and approximately "three to four hours" per year for paralegal work. This work includes, corresponding with the clients, correspondence to the Court, completion of reports, and filing those reports. Ms. Creighton estimated that this would cost $16,000.00. McCulloch was also a case arising out of Florida, and state law requires the filing of an annual guardianship plan and the preparation and filing of an annual accounting. *McCulloch*, No. 09-293V, 2017 WL 7053992, at *10 (Fed. Cl. Spec. Mstr. Dec. 19, 2017), aff'd on other grounds, 923 F.3d 998 (Fed. Cir. 2019). I have reviewed the projected expenses to comply with the requirements of the state court and found them reasonable. The expenses establishing the guardianship and the future costs to maintain the guardianship are compensable under *McCulloch,* and do not warrant a reduction. As such, petitioners' attorney, Ms. Creighton will be awarded a total of $18,400.00 in attorneys' fees and costs, with $16,000.00 for the maintenance of the guardianship for E.S.

**IV.   Conclusion**

In accordance with the foregoing, petitioners' application for final attorneys' fees and costs is

10

GRANTED. I find they are entitled to the following reasonable attorneys' fees and costs:

### a. Attorneys' Fees and Costs for Mr. John Frost

| | |
|---|---|
| Attorneys' Fees Requested: | $79,836.00 |
| (Reduction of Attorneys' Fees): | (-$12,450.56) |
| **Final Attorneys' Fees Award:** | **$67,385.44** |
| | |
| Final Attorneys' Costs Requested: | $63,799.84 |
| (Reduction of Attorneys' Costs) | (-$24,619.70) |
| **Final Attorneys' Costs Awarded:** | **$39,180.14** |
| | |
| **Total Attorneys' Fees and Costs:** | **$106,565.58** |

### b. Attorneys' Fees and Costs for Ms. Roberta Creighton

| | |
|---|---|
| Attorneys' Fees and Costs Requested: | $18,400.00 |
| **Final Attorneys' Fees Awarded:** | **$18,400.00** |

**Accordingly, I award the following:**

A) **A lump sum in the amount of $106,565.58 representing reimbursement for final attorneys' fees and costs, in the form of a check payable jointly to petitioners and their counsel, Mr. Robert Frost of Frost Van den Boom & Smith, P.A.**

B) **A lump sum payment, in the amount of $18,400.00, payable to petitioners and the Estate of E.S., representing $2,400.00 in reimbursement of fees charged by attorney Roberta Creighton for establishment of a guardianship and trust, and $16,000.00 in reimbursement of fees for the maintenance of the guardian account as required by the State of Florida for the Estate of E.S.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court shall enter judgment in accordance herewith.[4]

**IT IS SO ORDERED.**

**s/Thomas L. Gowen**
Thomas L. Gowen
Special Master

---

[4] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).